Thiago Coelho, SBN 324715
thiago@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

David P. Force, Esq.
dforce@steinsakslegal.com
**STEIN SAKS, PLLC**
285 Passaic Street
Hackensack, NJ 07601
Telephone: (201) 282-6500
Facsimile: (201) 282-6501

*Attorneys for Plaintiff and Proposed Class*

Jim D. Newman, Esq.
jnewman@hanover.com
**THE HANOVER LAW OFFICE**
500 N. Brand Blvd., Suite 1280
Glendale, CA 91203
Telephone: (818) 863-8304

*Attorney for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALCAZAR and PAMELA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIELE, INCORPORATED, a Delaware corporation; and Does 1 to 10, inclusive,<br><br>Defendants. | Case No. 3:20-cv-02890-VC<br><br>*Honorable Vince Chhabria*<br><br>**JOINT NOTICE OF MOTION AND MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASSES**<br><br>Date:        April 1, 2021<br>Time:       1:00 PM<br>Courtroom:   4 - 17th Floor |

JOINT NOTICE OF MOTION AND **MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND (2) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

PLEASE TAKE NOTICE THAT on April 1, 2021, at 1:00 p.m., or at such other date and time as may be ordered by the Court, in Courtroom 4 – 17th Floor, of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102 , Plaintiffs Juan Alcazar and Pamela Williams (herein "Plaintiffs" or "Named Plaintiffs"), on their own behalf and on behalf of the classes they represent, and Defendant Miele, Incorporated, ("Defendant"), will and hereby jointly do move for entry of an order:

1.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, preliminarily approving the proposed Class Action Settlement Agreement and Release that is attached as Exhibit 1 to the accompanying Memorandum of Points and Authorities (the "Settlement Agreement");

2.      Pursuant to Rules 23(c) and 23(g) of the Federal Rules of Civil Procedure: (a) certifying the two settlement classes; (b) appointing Wilshire Law Firm as class counsel of these classes ("Class Counsel"); and (c) appointing Named Plaintiffs as class representatives, all conditioned on the Court's final approval of the Settlement Agreement;

3.      Pursuant to Rules 23(b) and 23(d) of the Federal Rules of Civil Procedure, approving the proposed Notice of Proposed Settlement of Class Action and Fairness Hearing that is attached as Exhibit A to the Settlement Agreement;

4.      Pursuant to Rules 23(b) and 23(d) of the Federal Rules of Civil Procedure, approving the method of notice set forth in, among other places, the Settlement Agreement; and

5.      Pursuant to Rules 23(d) and 23(e) of the Federal Rules of Civil Procedure, establishing a date and time for a hearing on final approval of the Settlement Agreement and its fairness and the preceding submission of any objections or notices of intent to appear at such a hearing.

These motions are based on this notice of motion and motion, the accompanying memorandum of points and authorities and the exhibits to that brief, the papers and pleadings on file with the Court in this matter, and such other and further matters as may be brought to the Court's attention at or before the hearing of the motions.

///

///

JOINT NOTICE OF MOTION AND MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND (2) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

1

Dated: March 1, 2021                              **WILSHIRE LAW FIRM**

2

3                                                 By:*/s/Thiago Coelho*_____
                                                      Thiago Coelho
4                                                     Attorney for Plaintiff
                                                      JUAN ALCAZAR
5

6                                                 **STEIN SAKS, PLLC**

7

8                                                 By:*/s/ David P. Force*_____
                                                      David P. Force
9                                                     Attorney for Plaintiff
                                                      PAMELA WILLIAMS
10

11

12

13

Dated:  March 1, 2021                             **THE HANOVER LAW OFFICE**

14

15                                                By:*/s/ Jim D. Newman*_____
                                                      Jim D. Newman
16                                                    Attorney for Defendant
                                                      MIELE, INCORPORATED
17

18

19

20

21

22

23

24

25

26

27

28

JOINT NOTICE OF MOTION AND MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND (2) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

I.      INTRODUCTION .................................................................................................1

II.     PROCEDURAL BACKGROUND.........................................................................2

        A.      Procedural History .....................................................................................2

        B.      Parties.........................................................................................................2

        C.      The Terms of the Settlement.......................................................................2

                1.      Proposed Classes..............................................................................3

                        (a) Nationwide Class ...................................................................3

                        (b) California Class ......................................................................3

                        (c) The New York Class ...............................................................3

                2.      Relief to be Provided to Settlement Classes ....................................3

                        (a) Accessibility Measures and Modifications to the Website and

                        Mobile Applications .......................................................................3

                                (i) Website and Mobile Applications Modifications..............4

                                (ii) Diligence .......................................................................4

                                (iii) Intervening Legislation or Regulation ...........................4

                        (b) Notice of Settlement to Class Members .................................5

                3.      Notice of Settlement to Class Members............................................5

                4.      Final Approval and Fairness Hearing. ..............................................5

III.    THE  COURT  SHOULD  GRANT  PRELIMINARY  APPROVAL  TO  THE
        PROPOSED SETTLEMENT ...............................................................................6

        A.      Standard  for  Determining  Fairness,  Adequacy,  and  Reasonableness  of  a
                Proposed Settlement...................................................................................6

                1.      Strength of Plaintiff's Case ..............................................................7

                2.      Risk, Expense, Complexity, and Likely Duration of Further Litigation .....8

                3.      Relief Offered in Settlement .............................................................8

                4.      Arm's Length, Non-Collusive, Negotiated Resolution .....................9

                5.      Experience and Views of Counsel, and Plaintiff and Counsel's Adequate
                        Representation of the Class................................................................9

                6.      The Settlement has no Obvious Deficiencies ...................................10

        B.      The  Proposed  Method  of  Distributing  Relief  and  Processing  Class-Member
                Claims is Adequate. ...................................................................................11

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

    C.     The Agreement Treats Class Members Equitably Relative to Each Other............11

IV.    THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES ........................................................................................................12

    A.     Numerosity.......................................................................................13

    B.     Common Questions of Law or Fact ................................................14

    C.     Typicality ........................................................................................15

    D.     Adequacy of Representation ...........................................................15

    E.     Rule 23(b)(2) Requirements ...........................................................16

    F.     Rule 23(b)(3) Requirements ...........................................................16

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE....................................................................................................17

VI.    CONCLUSION.............................................................................................17

EXHIBIT 1 ..........................................................................................................19

TABLE OF CONTENTS

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Adoma v. Univ. of Phoenix, Inc.,*
   913 F. Supp. 2d 964 (E.D. Cal. 2012)...............................................................7, 8, 10

*Barbosa v. Cargill Meat Sols. Corp.,*
   297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................................8, 9

*Churchill Village LLC v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ...................................................................................17

*Dunk v. Ford Motor Co.,*
   48 Cal. App. 4th 1794 (1996) ..................................................................................12

*Estakhrian v. Obenstine,*
   2016 WL 6517052, at *4 (C.D. Cal. Feb. 16, 2016)...............................................12

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011))..........................................................................................6, 15

*Lerwill v. Inflight Motion Pictures, Inc.,*

   582 F.2d 507 (9th Cir. 1978) ...................................................................................15

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998) ...........................................................................6, 8, 9

*Maciel v. Bar 20 Dairy, LLC,*
   2018 WL 5291969 (E.D. Cal. 2018)........................................................................10

*Mendoza v. Tucson Sch. Dist. No. 1,*

   623 F.2d 1338 (9th Cir. 1980) .................................................................................17

*Mora v. Cal West Ag Services, Inc.,* 2019 WL 2084725, at *3 (E.D. Cal. 2019), *report and*
   *recommendation adopted,* 2019 WL 3760402 (E.D. Cal. 2019) .............................10

*N. Cty. Contractor's Assn. v. Touchstone Ins. Servs.,*
   27 Cal. App. 4th 1085 (1994) ....................................................................................7

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004).....................................................................6, 8, 10

*Navellier v. Sletter,*
   262 F.3d 923 (9th Cir. 2001) ...................................................................................12

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) .............................................................................1, 6, 8

TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*Torrisi v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................................................6

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) .................................................................................................7

*Van Lith v. iHeartMedia + Entm't, Inc.*,
   2017 WL 1064662 (E.D. Cal. Mar. 20, 2017) ...............................................................7, 8, 9, 10

*Wal-Mart Stores, Inc.*,
   564 U.S. 338 (2011)..............................................................................................................14

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..........................................................................9

*Wright v. Linkus Enterprises, Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ...........................................................................................7

**Statutes**

42 U.S.C. § 12102.....................................................................................................................3, 14

Americans with Disabilities Act of 1990............................................................................... passim

California Unruh Civil Rights Act ...................................................................................2, 8, 16

**Rules**

Rule 23 of the Federal Rules of Civil Procedure .................................................................. passim

Rule 23(a) of the Federal Rules of Civil Procedure.....................................................................12

Rule 23(b)(2) of the Federal Rules of Civil Procedure......................................................12, 16, 17

Rule 23(b)(3) of the Federal Rules of Civil Procedure......................................................12, 16, 17

Rule 23(c)(2)(A) of the Federal Rules of Civil Procedure ...........................................................17

1

## I.    INTRODUCTION

2      Plaintiffs Juan Alcazar and Pamela Williams, on their own behalf and on behalf of the classes

3   they represent ("Plaintiffs" or "Named Plaintiffs") and Defendant Miele, Incorporated, ("Defendant")

4   (collectively, the "Parties") jointly submit this brief in support of their joint motions for: (i) preliminary

5   approval of a class action settlement; and (ii) conditional certification of the settlement class on the

6   terms set forth in their Class Action Settlement Agreement and Release (the "Settlement Agreement"

7   or "Settlement").

8      The Parties respectfully submit that the Court should preliminarily approve the proposed

9   Settlement Agreement, which would certify three (3) classes, provide monetary compensation in the

10   form of an enhancement to the Named Plaintiffs, and ensure that Defendant's Website (defined *infra*)

11   and mobile applications are fully compliant with applicable law in the future.  When the benefits of

12   the Settlement are weighed against the inherent risks of continued, protracted litigation, including

13   potential defeat at certification, on the merits, or on appeal, it is clear that the Settlement is not only

14   within a range of possible judicial approval, the standard at this stage, but is also **fair, adequate and**

15   **reasonable**.

16      The proposed settlement is the product of arm's length negotiations between sophisticated

17   Parties and reflects a considered and fully informed exercise of judgment by the Parties, in light of

18   their perception of their rights and the costs, delay and uncertainty of litigation.  Consensual resolution

19   of disputes of this nature has long been preferred, as the interested parties are in the best position to

20   weigh the risks and benefits. To this end, judicial review of class settlements has been characterized

21   as limited to determining whether the settlement is the product of fraud, overreaching or collusion and

22   is, on the whole, fair adequate and reasonable to all concerned. *Officers for Justice v. Civil Serv.*

23   *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]he court may grant preliminary approval of a

24   settlement and direct notice to the class if the settlement: (1) appears to be the product of serious,

25   informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant

26   preferential treatment to class representatives or segments of the class; and (4) falls within the range

27   of possible approval." *Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWX), 2016 WL 6517052,

28

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS

at *4 (C.D. Cal. Feb. 16, 2016) (internal citation omitted).  The settlement proposed here should be approved, as it more than meets this standard.

## II.     PROCEDURAL BACKGROUND

### A.     Procedural History

This action was filed in this district on April 27, 2020, alleging violations of the Americans with Disabilities Act of 1990 (the "ADA") and the California Unruh Civil Rights Act (the "Unruh Act") based on Defendant's website, https://www.mieleusa.com (the "Website") allegedly not being fully or equally accessible to blind and visually-impaired consumers in violation of the ADA.  The Complaint requested injunctive relief, statutory damages, and attorneys' fees and expenses.  After arm's length negotiations between counsel, the Parties agreed to a settlement.  In agreeing to the Settlement, Plaintiffs and Plaintiffs' Counsel have considered: (i) the benefits to the members of the Settlement Classes (as hereinafter defined) by the remediation plan taking place on the terms agreed to in the Settlement; (ii) the facts developed during investigation and informal discovery and the law applicable thereto; (iii) the attendant risks of continued litigation and the uncertainty of the outcome of the litigation; and (iv) the desirability of permitting the Settlement to be consummated according to its terms.  Plaintiffs and Plaintiffs' Counsel believe that the Settlement is fair, reasonable and adequate and is in the best interests of Plaintiff and the Settlement Classes.

### B.     Parties

Plaintiffs purport to be visually-impaired and legally blind persons who require screen-reading software to read website content using their computers.  They allege that they encountered access barriers on the Website, which denied them "full and equal access" and continue to deter them from accessing the Website.

Defendant sells household and commercial appliances and services, which it advertises via the Website and at its brick and mortar stores located throughout the United States.

### C.     The Terms of the Settlement

After formulating and agreeing on key terms of the Settlement, the Parties undertook the effort to reduce their understanding to a comprehensive Settlement Agreement and to prepare the papers

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS

necessary to seek Court approval of such a settlement.  The Settlement resolves the claims and defenses asserted in the litigation or covered by the Settlement Agreement in a way that avoids the cost and risk of further litigation and provides fair, adequate and reasonable modifications and assistive measures to enhance access to Website by individuals with disabilities.  For these reasons, articulated more fully below, the Court should grant the Parties' joint motion for preliminary approval of the class action settlement, and for conditional certification of the Settlement Classes.

1. **Proposed Classes**

(a) **Nationwide Class.**  All individuals who (a) have a disability, as that term is defined under the Americans with Disabilities Act, the "ADA" 42 U.S.C. §12102, and similar state and local disability laws, and (b) have accessed the Website and Mobile Applications, and (c) have been denied equal access as a result of their disability.

(b) **California Class.**  All individuals in the State of California who (a) have a disability, as that term is defined under the ADA and similar state and local disability laws, and (b) have accessed the Website and Mobile Applications, and (c) have been denied equal access as a result of their disability.

(c) **The New York Class.** All individuals in the State or City of New York who (a) have a disability, as that term is defined under the ADA and similar state and local disability laws, and (b) have accessed the Website and Mobile Applications and (c) have been denied equal access as a result of their disability.

2. **Relief to be Provided to Settlement Classes**

(a) **Accessibility Measures and Modifications to the Website and Mobile Applications.**  In consideration of the dismissal and release of all claims asserted in the Complaint, Defendant will perform the following affirmative steps to enhance accessibility for persons with disabilities on the Website and its mobile applications to the extent not already performed.  Specifically, Defendant shall cause the modifications described in this Section II(a) and subject to the conditions and exceptions set forth in Sections XIV (Excused Performance) and XV (Force Majeure)

of the Settlement Agreement, to be made to the Website and mobile applications within eighteen (18) months after the Court's approval of the Settlement ("Effective Date").

(i) <u>Website and Mobile Applications Modifications.</u> Defendant shall modify the Website and mobile applications to improve accessibility and to provide individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website and mobile applications by modifying the Website and mobile applications in accordance with WCAG 2.0 Level.  The Parties further agree that Defendant can link to third-party websites and/or include third-party content on the Website and mobile applications (e.g., any web content that is dictated or generated by a third party and is not owned, coded, managed, and/or operated by the Released Parties [including, but not limited to, plug-ins, forms, PDF files, social media and YouTube© videos]), and nothing in the Settlement requires Defendant to undertake, to complete remediation for, or to be responsible or liable for any form of third-party content that is incorporated into the Website or mobile applications.  The Parties agree that all other requested modifications as to the Website and any mobile application are not readily achievable or otherwise are not required.

(ii) <u>Diligence</u>. Defendant agrees to undertake diligent, good faith efforts to satisfy the deadlines listed in this Section (as set forth in Section II.b. of the Settlement Agreement).  The Parties agree that Defendant will have complied with the provisions of Section II of the Settlement Agreement as long as Defendant has undertaken diligent, good faith efforts to meet the referenced deadlines.

(iii) <u>Intervening Legislation or Regulation</u>.  If legislation is passed modifying Title III of the ADA or if the DOJ or any other federal government entity promulgates final ADA Title III regulations regarding website accessibility during the time period for which modifications are to be made under this Section, this Agreement shall automatically, without further action by the Parties, be modified such that Defendant shall be required only to achieve compliance with the minimum requirements set forth in any such legislation or regulation within the timeframe for compliance set forth in such legislation or regulation.   The Parties shall meet and confer at the

written request of either party to discuss whether modifications to the terms of this Settlement shall be made to be consistent with any such final statutes, regulations, or rules.

(b)   <strong>Monetary Award and Attorneys' Fees</strong>

(i)   The Settlement provides for an enhancement award of $1,000 for each of the Named Plaintiffs as the Class Representatives.

(ii)   Class Counsel may seek approval of attorneys' fees and taxable costs in the amount of $55,000.00, payable to Class Counsel as follows: $40,000 to Wilshire Law Firm and $15,000 to Stein Saks PLLC.

<strong>3.   Notice of Settlement to Class Members.</strong>

Class Counsel will e-mail or mail a copy of the Notice to each individual known to Class Counsel to have a disability and to have expressed any concerns similar to those which Named Plaintiffs have alleged in this Action.  Additionally, Defendant will make reasonable efforts, and will bear the costs, to publish the Notice in the next edition of the regularly-circulating publications of the National Federation of the Blind, the American Council of the Blind, The American Foundation for the Blind, National Association for the Deaf, and the Los Angeles Radio Reader Service.  Counsel for the Parties shall distribute the Notice within fourteen (14) calendar days after the Court enters the Preliminary Approval Order.  The failure of any Class Members to receive the Notice shall not be a basis for invalidating the Settlement Agreement or any order entered pursuant to the Settlement Agreement, and the settlement shall nevertheless be binding upon all Class Members.

<strong>4.   Final Approval and Fairness Hearing.</strong>

At a date set by the Court, the Settlement Agreement contemplates that the Court will hold a Final Approval and Fairness Hearing, and if the Settlement Agreement is approved, enter an Order of Final Approval that shall: (a) dismiss the Complaint with prejudice; (b) approve the Settlement, adjudging its terms to be fair, reasonable and adequate, and direct consummation of its terms and provisions; and (c) permanently enjoin all Class Members from presenting against the Released Parties (as defined by the Settlement) any individual or Settlement Class claims that are released by the Settlement Agreement or which were or could have been asserted in the Action.

III.   **THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT**

A.   **Standard for Determining Fairness, Adequacy, and Reasonableness of a Proposed Settlement.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement.  In evaluating overall fairness of a proposed settlement, the court reviews the settlement "as a whole, rather than the individual component parts." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)); *see also Officers for Justice*, 688 F.2d at 625.  A determination of whether a proposed settlement is "fundamentally fair, adequate, and reasonable" requires:

> [A] balancing of several factors which may include, among others, **some or all** of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis added) (*citing Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).  These factors are not exhaustive, and this Court has a "wide discretion in assessing the weight and applicability of each factor."  *See DIRECTV, Inc*., 221 F.R.D. at 526.

This determination, while committed to the sound discretion of the Court, is to be made with deference to the judgment of the class representatives and their counsel, as "the court's intrusion upon what is otherwise a private consensual agreement between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. Accordingly, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the court must not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*.

Instead, the purpose of the preliminary evaluation and approval of a proposed class action settlement is to determine whether the settlement is "within a range of possible judicial approval." *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) (*citing* Newberg on Class Actions §11:25 (4th ed. 2002)); *see also N. Cty. Contractor's Assn. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1089, 33 Cal. Rptr. 2d 166 (1994) (describing this as a "reasonable range."). The preliminary approval is merely the prerequisite to giving notice to elicit the class members' reaction to the proposed Settlement Agreement and determine whether or not to opt out of the Nationwide Class. The preliminary approval process allows that to happen.

Lastly, as a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

### 1. Strength of Plaintiffs' Case

"When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quotations omitted). Of course, the Court cannot fully assess the strength of Plaintiffs' case, because evidence has not been fully presented. *Adoma*, 913 F. Supp. 2d at 975. Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."

While Plaintiffs' and their counsel naturally believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims, there are mitigating factors. These include, but are by no means limited to, the fact that success on the merits at trial would require establishment of Plaintiffs' claims, namely, that the Website violated the ADA and the Defendant violated the Unruh Act by discriminating against individuals with visual impairments. A trier of fact may very well determine, after reviewing an analysis of the website, that it works adequately with screen-reading software and is therefore ADA compliant. Certification would also present challenges, particularly as to the numerosity requirement, as Plaintiff can only roughly estimate the class size. Where a court

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS

determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's case" factor "weighs in favor" of final approval of the Settlement.  *Van Lith*, 2017 WL 1064662, at *11.

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma*, 913 F. Supp. 2d at 976. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. (*quoting Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Of course, the risk and expense of continued litigation is obvious; absent settlement, the Parties would be required to continue litigation, which necessarily would involve significant discovery (which has yet to commence), a motion for certification which Defendant would surely contest, and other dispositive motions such as a motion for summary judgment and possible appeals.  Once all is said and done, the ultimate recovery might be of no greater value – or of lesser value – to that in the proposed Settlement Agreement.  Moreover, the process only becomes more complex over a longer period of time, as new issues emerge, for example, through discovery or simply determinations relating to case strategy.  Accordingly, this factor clearly weighs in favor of approval. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 447 (E.D. Cal. 2013) (finding that this factor favored approval where "there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery").

### 3.    Relief Offered in Settlement

The relief offered in a settlement is assessed as a whole, "complete package" for overall fairness. *DIRECTV, Inc*., 221 F.R.D. at 527 (*quoting Officers for Justice*, 688 F.2d at 628).  Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (emphasis added) (*citing Linney*, 151 F.3d at 1242 (quotation omitted)).

Here, the relief includes injunctive relief and payment of an enhancement award for Named

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs as the Class Representatives.  While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *see also Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better…does not mean the settlement presented was not fair, reasonable, or adequate.").  Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### 4.    Arm's Length, Non-Collusive, Negotiated Resolution

This Circuit has held that it puts "a good deal of stock in the product of arms-length, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*citing Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 625).  Critically, there is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) (emphasis added), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, Counsel for the Parties have separately initiated preliminary reviews of the applicable law and facts pertaining to the alleged claims, potential defenses thereto, and the damages claimed therein.  The adversarial, non-collusive and at-arm's-length communications between the Parties' counsel considered issues including, but not limited to, the following: (1) certification of nationwide and California settlement classes; (2) a service award for the Named Plaintiffs; and (3) modifications made to the Website and mobile applications.  The resulting proposed Settlement Agreement is the product of hours of such arm's length negotiations between the Parties, which allows for an initial presumption of fairness.

### 5.    Experience and Views of Counsel, and Plaintiff and Counsel's Adequate Representation of the Class

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."  *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *13 (E.D. Cal. Mar. 20, 2017) (*citing Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013)).  "Great weight is

accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation." *Id.* (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted).  Accordingly, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel." *Id.* (*citing DIRECTV, Inc.*, 221 F.R.D. at 528).

Class Counsel has extensive experience in litigating ADA class actions. (*See* Declaration of Thiago M. Coelho ("Coelho Decl."), ¶¶ 3-5).  Plaintiff's counsel understood and appreciated the defenses and position of Defendant but believed Plaintiffs would ultimately succeed in the action. Considering the Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish liability for the claim and the potential challenges to bringing a Motion for Class Certification, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The Parties have produced a result that they believe to be in their respective best interests.  The Parties also have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs are also aware of the burdens of proof necessary to establish liability for the claim asserted in the action, the defenses thereto, the difficulties in establishing damages for Plaintiffs, and the potential challenges to bringing a Motion for Class Certification.

### 6.    The Settlement has no Obvious Deficiencies

Furthermore, because the Settlement Agreement has no obvious deficiencies, preliminary approval is proper. *See Mora v. Cal West Ag Services, Inc.*, 2019 WL 2084725, at *3 (E.D. Cal. 2019), *report and recommendation adopted*, 2019 WL 3760402 (E.D. Cal. 2019) (*citing* Newberg on Class Actions §13:13 (5th ed. 2014)) ("The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without **obvious deficiencies**, and within the range of possible approval as to that class.") (emphasis added); *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *3 (E.D. Cal. 2018) (*citing* Newberg on Class Actions §13:13 (5th ed. 2011) ("Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement 'appears

to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'") (emphasis added) (*quoting Lounibos v. Keypoint Government Solutions Inc*., 2014 WL 558675, at *5 (N.D. Cal. 2014)).  No such "obvious deficiencies" are present here.

**B.      The Proposed Method of Distributing Relief and Processing Class-Member Claims is Adequate.**

The Settlement provides practical means for Class Members to gain enhanced access to a variety of information sources about the Website and mobile applications. Additionally, the Settlement Agreement requires Defendant to modify the Website and mobile applications to improve accessibility and to provide individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website and mobile applications by having the Website and mobile applications modified in accordance with WCAG 2.0 Level AA.

While Named Plaintiffs dispute that the Website is, in its current form, compliant, each side recognizes and wishes to avoid the risk, expense, and delay associated with further litigation of these issues, particularly since Defendant is willing to further enhance the accessibility of its Website and mobile applications to its guests with disabilities.

Proposed settlements are not judged against a hypothetical or speculative measure of what might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at 1242 (internal quotations omitted). The proposed settlement achieves a fundamentally fair, adequate, and reasonable resolution of all relevant claims.

**C.      The Agreement Treats Class Members Equitably Relative to Each Other.**

The Settlement enhances and facilitates access for individuals with disabilities to the Website and mobile applications to a greater extent and far faster than Defendant contends that it could be mandated (if at all) through litigation. Resolving the Website claim would require significant give and take between the Parties, potential experts, and their counsel with respect to what is practical, possible, feasible, desirable, needed and/or required.  Indeed, making the Website and mobile applications

accessible to individuals with disabilities is a substantial undertaking, as the Website and mobile applications contain numerous individual pages, and rendering such pages accessible is predominantly an individual, manual process.

As noted in Section III(B) *supra*, the cornerstone of the compliance process is, subject to certain exceptions, adoption of the WCAG 2.0 Level AA as a guideline in making modifications. The Settlement Agreement provides assurances of accessibility of the Website and mobile applications within eighteen (18) months after the Effective Date.

The Parties believe these provisions will provide individuals with disabilities with full and equal access to the Website and mobile applications. The fairness of the Settlement is underscored not only by the scope of what is provided and the difficulty of providing it, but by debate as to whether there is any basis for mandating website and mobile application accessibility.

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES

As part of the Settlement, the Parties also seek certification of the Settlement Classes conditioned on final approval of the Settlement. As stated *supra*, those classes are: (1) the Nationwide Class; (2) the California Class; and (3) the New York Class. In settlement cases, class certification is subject to a "lesser standard of scrutiny." *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1807, n. 19 (1996). Accordingly, district courts enjoy broad discretion in making such class certification determinations, *see Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001), so long as the following criteria are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All of these factors are present here, and therefore, conditional certification of the Settlement Classes is appropriate.

Moreover, where class-wide injunctive relief is sought, Rule 23(b)(2) further requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class[.]" Lastly, class certification brought pursuant to Rule 23(b)(3) requires a determination that "questions

of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy."  For the purposes of the Settlement, the Parties agree that these criteria are satisfied under the lesser standard of scrutiny applicable here.

### A. Numerosity

Both of the Settlement Classes satisfy numerosity requirements, as each deals with <u>all</u> individuals with disabilities as defined under the ADA – either nationwide or in the State of California – who have attempted to gain access to the Website during the relevant time period.  Accordingly, virtually <u>every</u> impaired visitor to the Website during the relevant time period would be covered by these classes.  Plaintiffs admit that the number and identities of these Class Members are unknown, and Plaintiffs alleges it could range into the hundreds.  For the California Class, Plaintiffs estimates 1,000 persons.  For these reasons, Plaintiff contends, and Defendant does not dispute for the Settlement only, that Rule 23's numerosity requirement is satisfied.

Plaintiffs, consulting www.similarweb.com, has determined that 310,000 persons visited www.mieleusa.com last month.  91.65% of those persons were Americans; accordingly, 284,115 Americans visited the website last month.  In order to determine, from that figure, the number of blind persons who use screen-reading software to visit the website, Plaintiffs first noted that as of 2016, the Pew Research survey estimated that 77% of Americans with a disability go online.  Given that the percentage of Americans who go online, via desktop, laptop, or phone, is increasing over time, and the likelihood that a blind person would use screen-reading software given its general availability, Plaintiffs conservatively estimate that 70% of blind and visually impaired Americans use screen-reading software to experience the internet.  To determine the number of legally blind persons living in California, Plaintiffs found data showing that 797,300 Californians have a visual disability, out of 7,894,900 in the U.S. population.  https://www.nfb.org/resources/blindness-statistics.  Accordingly, 10% of visually impaired Americans live in California.  1.02 million Americans were legally blind in 2015.     https://www.nih.gov/news-events/news-releases/visual-impairment-blindness-cases-us-expected-double-2050.     Accordingly, assuming that 10% of those legally blind people live in

California, Plaintiff estimates that 102,000 Californians are legally blind.  Dividing the number of U.S. visitors to the website by the total U.S. population gives us a percentage of Americans who visited the website.  The figure is .03%.  Multiplying 70% (the percentage of blind and visually impaired persons who use screen-readers) times 102,000 legally blind Californians gives us 71,400 legally blind Californians who use the internet.  Multiplying that figure times the percentage of Americans who visited the website in a month, or .03%, gives us 21.6 monthly visitors.  As the class period is two years long, the figure is actually 519.

Meanwhile, New York makes up 5.86% of the U.S. population.  Assuming that 5.86% of legally blind Americans live in New York, 59,772 New Yorkers are legally blind, and if 70% of them go online, that makes 41,840 New Yorkers who use screen readers.  Multiplying that figure times the percentage of Americans who visited the website in a month, or .03%, gives us 12.55, or 301 within the class period.

## B.    Common Questions of Law or Fact

The commonality factor merely requires that there must be one common legal or factual issue whose resolution will resolve an issue central to the validity of each claim of a class. *See Wal-Mart Stores, Inc.* 564 U.S. 338; *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient[.]").  Here, the Nationwide, California Class, and New York Class claims all implicate the Named Plaintiffs' claims that he has been denied full and equal access to the *same* Website.  Here, the common question, which is certainly apt to produce common answers which drive the litigation, is, "Is the website compatible with screen-reading software?"

Likewise, the claims are brought commonly under the ADA and the Unruh Act, and commonly implicate the ADA's definition of "disability," meaning: (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  *See* 42 U.S.C. § 12102. For these reasons, Plaintiffs contend, and Defendant does not dispute the Settlement only, that the "common question" factor is satisfied under Rule 23.

**C.      Typicality**

Rule 23's permissive standard for typicality is satisfied so long as Named Plaintiffs have injuries similar to those of the unnamed Class Members that result from the same course of conduct. There is no requirement that Named Plaintiffss claims be identical to that of the unnamed Class Members. *See Hanlon*, 150 F.3d at 1020 ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent Class Members; the need not be substantially identical.").

With respect to both proposed classes, Named Plaintiffs allege difficulties common to any individual with visual impairments as defined under the ADA, and neither his claims nor the relief provided in the Settlement is tailored to a particular level or kind of disability.  Indeed, the Settlement provides injunctive relief following the WCAG 2.0 Level AA standards as a guideline in making such improvements.   Plaintiffs allegedly suffered the same injury as the class members because they were all denied access to the same website for the same reasons.  Thus, Plaintiffs contend, and Defendant does not dispute for the Settlement only, that their claims are typical of the claims of the classes, because they arise from the same factual basis and are based upon the same legal theories as those applicable to the classes.

**D.      Adequacy of Representation**

The adequacy requirement is met if Named Plaintiffs and their counsel: (1) do not have any conflicts of interest with other Class Members; and (2) will vigorously prosecute the case on behalf of the class. *Hanlon*, 150 F.3d at 1020 (*citing Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978)).  Here, Named Plaintiffs' interests in prosecuting his Class Action and obtaining the most beneficial recovery possible is fully compatible with the Nationwide and California Class Members' interests.  In any case, any Class Member who instead determines that he or she wishes to be excluded from the Settlement will have full opportunity to do so.  For these reasons, Plaintiff contends, and Defendant does not dispute for the Settlement only, that those requirements are met.

Class counsel is highly experienced in class action litigation and in ADA class actions involving websites which do not work for blind people in particular.  Thiago Coelho has prosecuted

over a hundred such cases, many of them to positive settlements requiring defendants to permanently fix their websites.  (Coelho Decl., ¶ 2.).  Named Plaintiffs have chosen their counsel well.

### E.        Rule 23(b)(2) Requirements

For classes to be certified under Rule 23(b)(2), "the party opposing the class [must have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Here, if Named Plaintiffs are entitled to a particular form of relief under a class claim, all of the members of that class would be entitled to that relief.  Indeed, a key characteristic of the Settlement Classes is that the relief sought is defined in terms of actions to be taken to ameliorate the alleged underlying problems experienced in common by class members.  It is clear that here, the injunctive relief is the dominant form of relief.   Accordingly, Plaintiffs contend, and Defendant does not dispute for the Settlement only, that the requirements for Rule 23(b)(2) requirements are met.

### F.        Rule 23(b)(3) Requirements

Finally, class certification under Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).  Under the lesser standard of scrutiny applicable in settlement cases, the Parties agree for the Settlement only that relief to be recovered by the Settlement Class would be based on common questions of law and fact – namely, their experiences as individuals with disabilities in accessing the Website.  Here, a common question, whether the website works with screen-reading software, dominates the litigation as the central question, and predominates over individual issues because it will dictate whether the ADA, the Unruh Act, and the NYCHRL were violated, and whether Plaintiffs' claim for declaratory relief is appropriate.  This question can also be determined on a class-wide basis, by an expert report as to the workings of the website.  Individual questions as to damages cannot defeat predominance.  The Parties further agree that a class action is superior to other methods of efficient adjudication, because, for example, any Nationwide Class

Member who prefers to opt out of the Settlement, can do so, and the cost of litigation for an individual plaintiff would be prohibitive as compared to the amount of an individual recovery, which could be nothing.

## V.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE

Courts have a wide degree of discretion in requiring notice of settlement of class claims certified under Rule 23(b)(2), as Rule 23(c)(2)(A) merely provides that "the court may direct appropriate notice to the class." Even in the more demanding context of a Rule 23(b)(3) opt-out class, notice is sufficient if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), *quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).

The proposed Notice, appended as Exhibit A to the Settlement Agreement, more than meets this standard.  It informs Class Members of the general terms of the complex Settlement Agreement, advises them of their right to request exclusion from the Settlement, and to object at the Final Approval and Fairness hearing, and instructs them how to do so.  It also discloses Class Counsel's fee request and Named Plaintiffs' enhancement payment.  Class Counsel will e-mail or mail a copy of the Notice to each individual known to Class Counsel to have a disability and to have expressed any concerns similar to those which Named Plaintiff has alleged in the Action.  Defendant, in turn, will make reasonable efforts, and will bear the costs, to publish the Notice in the next edition of the regularly-circulating publications of the National Federation of the Blind, the American Council of the Blind, The American Foundation for the Blind, National Association for the Deaf, and the Los Angeles Radio Reader Service.  Counsel for the Parties shall distribute the Notice within fourteen (14) calendar days after the Court enters the Preliminary Approval Order.

Given the nature of the claims and composition of the Settlement Classes, and their use of and reliance on non-traditional media for their news and information, these are sufficient and appropriate means of providing notice.

## VI.    CONCLUSION

1   For the reasons set forth above, the Parties respectfully request preliminary approval of the

2 proposed Settlement Agreement, and that the Settlement Classes be certified conditioned on final

3 approval of the Settlement.

4

5 Dated: March 1, 2021       **WILSHIRE LAW FIRM**

6

7             By:*/s/Thiago Coelho*

8               Thiago Coelho
               Attorneys for Plaintiff

9               JUAN ALCAZAR

10            **STEIN SAKS, PLLC**

11

12            By:*/s/ David P. Force*

13              David P. Force
              Attorney for Plaintiff

14              PAMELA WILLIAMS

15

16

17 Dated:  March 1, 2021       **THE HANOVER LAW OFFICE**

18            By:*/s/ Jim D. Newman*

19              Jim D. Newman
              Attorney for Defendant

20              MIELE, INCORPORATED

21

22

23

24

25

26

27

28

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS