1
2
3
4

Thiago M. Coelho, SBN 324715
thiago@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

5
6
7
8

Yaakov Saks, Esq.
ysaks@steinsakslegal.com
**STEIN SAKS, PLLC**
285 Passaic Street
Hackensack, NJ 07601
Telephone: (201) 282-6500
Facsimile: (201) 282-6501

9

*Attorneys for Plaintiff and Proposed Class*

10
11
12
13

Jim D. Newman, Esq.
jnewman@hanover.com
**THE HANOVER LAW OFFICE**
500 N. Brand Blvd., Suite 1280
Glendale, CA 91203
Telephone: (818) 863-8304

14

*Attorney for Defendants*

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

18
19

JUAN ALCAZAR and PAMELA WILLIAMS,
individually and on behalf of all others similarly
situated,

20

Plaintiffs,

21

v.

22
23

MIELE, INCORPORATED, a Delaware
corporation; and Does 1 to 10, inclusive,

24

Defendants.

Case No. 3:20-cv-02890-VC

*Honorable Vince Chhabria*

**JOINT NOTICE OF MOTION AND
MOTION FOR: (1) PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT; AND (2) CONDITIONAL
CERTIFICATION OF SETTLEMENT
CLASSES**

Date:        December 02, 2021
Time:        10:00 AM
Courtroom:  4 - 17th Floor

25
26
27
28

CASE NO. 3:20-cv-02890-VC

JOINT MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND (2)
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

1    **NOTICE OF MOTION**

2    PLEASE TAKE NOTICE THAT on December 02, 2021, at 1:00 p.m., or at such other date and time

3    as may be ordered by the Court, in Courtroom 4 – 17th Floor, of the above-captioned Court, located at

4    450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Juan Alcazar and Pamela Williams

5    (herein "Plaintiffs" or "Named Plaintiffs"), on their own behalf and on behalf of the class they

6    represent, and Defendant Miele, Incorporated ("Defendant"), will and hereby jointly do move for entry

7    of an order:

8    1.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, preliminarily approving

9    the proposed Class Action Settlement Agreement and Release that is attached as Exhibit 1 to the

10   accompanying Memorandum of Points and Authorities (the "Settlement Agreement");

11   2.    Pursuant to Rules 23(c) and 23(g) of the Federal Rules of Civil Procedure: (a) certifying

12   the settlement class; (b) appointing Wilshire Law Firm as class counsel of the class ("Class Counsel");

13   and (c) appointing Named Plaintiffs as class representatives, all conditioned on the Court's final

14   approval of the Settlement Agreement;

15   3.    Pursuant to Rules 23(b) and 23(d) of the Federal Rules of Civil Procedure, approving

16   the proposed Notice of Proposed Settlement of Class Action and Fairness Hearing that is attached as

17   Exhibit A to the Settlement Agreement;

18   4.    Pursuant to Rules 23(b) and 23(d) of the Federal Rules of Civil Procedure, approving

19   the method of notice set forth in, among other places, the Settlement Agreement; and

20   5.    Pursuant to Rules 23(d) and 23(e) of the Federal Rules of Civil Procedure, establishing

21   a date and time for a hearing on final approval of the Settlement Agreement and its fairness and the

22   preceding submission of any objections or notices of intent to appear at such a hearing.

23   These motions are based on this notice of motion and motion, the accompanying memorandum

24   of points and authorities and the exhibits to that brief, the papers and pleadings on file with the Court

25   in this matter, and such other and further matters as may be brought to the Court's attention at or before

26   the hearing of the motions.

27   ///

28
JOINT MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND (2)
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

1

Dated: November 01, 2021                    **WILSHIRE LAW FIRM**

2

3                                           By:/s/ Thiago Coelho_____
                                               Thiago M. Coelho
4                                              Attorney for Plaintiff
                                               JUAN ALCAZAR
5

6    Dated: November 01, 2021                    **STEIN SAKS, PLLC**

7

8                                           By:_____
                                               Yaakov Saks
9                                              Attorney for Plaintiff
                                               PAMELA WILLIAMS
10

11

12

13   Dated:  November 01, 2021                    **THE HANOVER LAW OFFICE**

14

15                                          By:  ___/s/Jim D. Newman_____
                                               Jim D. Newman
16                                             Attorney for Defendant
                                               MIELE, INCORPORATED
17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND (2)
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

I.     INTRODUCTION ................................................................................................1

II.    PROCEDURAL BACKGROUND........................................................................2

     A.    Procedural History ...................................................................................2

     B.    Parties......................................................................................................2

     C.    The Terms of the Settlement....................................................................3

          1.    Proposed Classes...........................................................................3

               (a) Nationwide Class ......................................................................3

          2.    Relief to be Provided to Settlement Classes ................................3

               (a) Accessibility Measures and Modifications to the Website and

                     Mobile Applications ..............................................................3

               (b) Notice of Settlement to Class Members ..................................5

          3.    Notice of Settlement to Class Members........................................5

          4.    Final Approval and Fairness Hearing. ..........................................5

III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT ...............................................................................6

     A.    Standard for Determining Fairness, Adequacy, and Reasonableness of a Proposed Settlement...................................................................................6

          1.    Strength of Plaintiff's Case...........................................................7

          2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation ...80

          3.    Relief Offered in Settlement ......................................................11

          4.    Arm's Length, Non-Collusive, Negotiated Resolution...............11

          5.    Experience and Views of Counsel, and Plaintiff and Counsel's Adequate Representation of the Class................................................12

          6.    The Settlement has no Obvious Deficiencies ...........................133

     B.    The Proposed Method of Distributing Relief and Processing Class-Member Claims is Adequate. ...................................................................143

     C.    The Agreement Treats Class Members Equitably Relative to Each Other..........144

IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES ...........................................................................................155

     A.    Numerosity............................................................................................155

     B.    Common Questions of Law or Fact.......................................................177

     C.    Typicality .............................................................................................177

     D.    Adequacy of Representation .................................................................188

     E.    Rule 23(b)(2) Requirements .................................................................198

V.      THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
        NOTICE..................................................................................................................199

VI.     CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Adoma v. Univ. of Phoenix, Inc.,*
  913 F. Supp. 2d 964 (E.D. Cal. 2012)..............................................................8, 10, 12

*Barbosa v. Cargill Meat Sols. Corp.,*
  297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................11, 12

*Churchill Village LLC v. General Electric,*
  361 F.3d 566 (9th Cir. 2004) .....................................................................................19

*Dunk v. Ford Motor Co.,*
  48 Cal. App. 4th 1794 (1996) ....................................................................................15

*Estakhrian v. Obenstine,*
  2016 WL 6517052, at *4 (C.D. Cal. Feb. 16, 2016)..................................................2

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)) .............................................................................6, 11, 17, 18

*Lerwill v. Inflight Motion Pictures, Inc.,*
  582 F.2d 507 (9th Cir. 1978) .....................................................................................18

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998) .........................................................................7, 11, 14

*Maciel v. Bar 20 Dairy, LLC,*
  2018 WL 5291969 (E.D. Cal. 2018) ..........................................................................13

*Mendoza v. Tucson Sch. Dist. No. 1,*
  623 F.2d 1338 (9th Cir. 1980) ...................................................................................19

*Mora v. Cal West Ag Services, Inc.,* 2019 WL 2084725, at *3 (E.D. Cal. 2019), *report and
  recommendation adopted,* 2019 WL 3760402 (E.D. Cal. 2019) ...............................13

*N. Cty. Contractor's Assn. v. Touchstone Ins. Servs.,*
  27 Cal. App. 4th 1085 (1994) .......................................................................................7

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................7, 10, 11, 12

*Navellier v. Sletter,*
  262 F.3d 923 (9th Cir. 2001) .....................................................................................15

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ...............................................................1, 6, 7, 11, 12

*Torrisi v. Tuscon Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) .........................................................................................7

*Util. Reform Project v. Bonneville Power Admin.*,
  869 F.2d 437 (9th Cir. 1989) ...........................................................................7

*Van Lith v. iHeartMedia + Entm't, Inc.*,
  2017 WL 1064662 (E.D. Cal. Mar. 20, 2017) ...........................................8, 10, 12

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)............................................................................6, 17

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................................................12

*Wright v. Linkus Enterprises, Inc.*,
  259 F.R.D. 468 (E.D. Cal. 2009) ...................................................................7

**Statutes**

42 U.S.C. § 12102.......................................................................................3, 7

Americans with Disabilities Act of 1990................................................... passim

California Unruh Civil Rights Act.......................................................... passim

**Rules**

Rule 23 of the Federal Rules of Civil Procedure ....................................... passim

Rule 23(a) of the Federal Rules of Civil Procedure....................................15

Rule 23(b)(2) of the Federal Rules of Civil Procedure.....................15, 18, 19

Rule 23(b)(3) of the Federal Rules of Civil Procedure...............................19

Rule 23(c)(2)(A) of the Federal Rules of Civil Procedure ..........................19

## I.    INTRODUCTION

Plaintiffs Juan Alcazar and Pamela Williams, on their own behalf and on behalf of the class they represent ("Plaintiffs" or "Named Plaintiffs"), and Defendant Miele, Incorporated ("Defendant") (collectively, the "Parties"), jointly submit this brief in support of their joint motions for: (i) preliminary approval of a class action settlement; and (ii) conditional certification of the settlement class on the terms set forth in their Class Action Settlement Agreement and Release (the "Settlement Agreement" or "Settlement").

The Parties respectfully submit that the Court should preliminarily approve the proposed Settlement Agreement, which would certify one (1) class, provide monetary compensation in the form of an enhancement to the Named Plaintiffs, and ensure that Defendant's Website (defined *infra*) and mobile applications are fully compliant with applicable law in the future. When the value of the relief each Class Member will receive from the proposed settlement are weighed against the inherent risks of continued, protracted litigation inherent with the risks of litigating the claims to finality—including potential defeat at certification, on the merits, or on appeal—it is clear that the Settlement is not only within a range of possible judicial approval, the standard at this stage, but is also *fair, adequate, and reasonable*. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *See also Hunt v. VEP Healthcare, Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017).

The proposed settlement is the product of arm's length negotiations between sophisticated Parties and reflects a considered and fully informed exercise of judgment by the Parties, in light of their perception of their rights and the costs, delay, and uncertainty of litigation. Consensual resolution of disputes of this nature has long been preferred, as the interested parties are in the best position to weigh the risks and benefits. To this end, judicial review of class settlements has been characterized as limited to determining whether the settlement is the product of fraud, overreaching, or collusion and is, on the whole, fair, adequate, and reasonable to all concerned. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant

preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWX), 2016 WL 6517052, at *4 (C.D. Cal. Feb. 16, 2016) (internal citation omitted).  The settlement proposed here should be approved, as it more than meets this standard.

## II.    PROCEDURAL BACKGROUND

### A.    Procedural History

This action was filed in this district on April 27, 2020, alleging violations of the Americans with Disabilities Act of 1990 (the "ADA") and the California Unruh Civil Rights Act (the "Unruh Act"), based on Defendant's website, https://www.mieleusa.com (the "Website"), allegedly not being fully or equally accessible to blind and visually impaired consumers in violation of the ADA.  The Complaint requested injunctive relief, statutory damages, attorneys' fees, and expenses.  Dkt. 1. Further, on October 26, 2020, Plaintiff Pamela Williams filed an action in the United States District Court for the Southern District of New York, alleging violations of the ADA, the New York City Human Rights Law, Admin. Code § 8-101, *et seq*. ("NYCHRL"), and seeking declaratory relief, a preliminary and permanent injunction, compensatory damages, attorneys' fees, and expenses.  On February 22, 2021, the Court approved the Named Plaintiffs' joint stipulation to consolidate, Dkt. 33, and on March 01, 2021, the Named Plaintiffs filed a consolidated class action complaint.  On April 01, 2021, the Court denied the Parties motion for preliminary approval of a class action settlement because it released Class Members State law claims, which entitled them to monetary relief, without the creation of a settlement fund.  Dkt. 41.  The Parties now seek for the Court to certify a class in which Class Members will receive injunctive relief and release their ADA claims, but not their State law claims, allowing for Class Members to pursue their State law claims on an individual basis.  After arm's length negotiations between counsel, the Parties agreed to a settlement.  In agreeing to the Settlement, Plaintiffs and Plaintiffs' Counsel have considered: (i) the benefits to the members of the Settlement Class (as hereinafter defined) by the remediation plan taking place on the terms agreed to in the Settlement; (ii) the facts developed during investigation and informal discovery and the law applicable thereto; (iii) the attendant risks of continued litigation and the uncertainty of the outcome

2                    CASE NO. 3:20-cv-02890-VC

JOINT MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND (2)
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

1   of the litigation; and (iv) the desirability of permitting the Settlement to be consummated according to

2   its terms.  Plaintiffs and Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate

3   and is in the best interests of Plaintiffs and the Settlement Class.

4   **B.     Parties**

5       Plaintiffs purport to be visually impaired and legally blind persons who require screen-reading

6   software to read website content using their computers.  They allege that they encountered access

7   barriers on the Website, which denied them "full and equal access" and continue to deter them from

8   accessing the Website.

9       Defendant sells household and commercial appliances and services, which it advertises and

10  sells via the Website and its brick-and-mortar stores, which are located throughout the United States.

11  **C.     The Terms of the Settlement**

12      After formulating and agreeing on key terms of the Settlement, the Parties undertook the effort

13  to reduce their understanding to a comprehensive Settlement Agreement and to prepare the papers

14  necessary to seek Court approval of such a settlement.  The Settlement resolves the claims and

15  defenses asserted in the litigation or covered by the Settlement Agreement in a way that avoids the

16  cost and risk of further litigation and provides fair, adequate, and reasonable modifications and

17  assistive measures to enhance access to the Website by individuals with visual disabilities.  For these

18  reasons, articulated more fully below, the Court should grant the Parties' joint motion for preliminary

19  approval of the class action settlement, and for conditional certification of the Settlement Class.

20  **1.     Proposed Class**

21      (a)     **Nationwide Class.**  All individuals who (a) have a visual disability, as

22  that term is defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 ("ADA") and similar

23  state and local disability laws, (b) have accessed the Website and/or Mobile Applications, and (c) have

24  been denied equal access as a result of their disability.

25  **2.     Relief to be Provided to Settlement Classes**

26      (a)     **Accessibility Measures and Modifications to the Website and**

27  **Mobile Applications.**  In consideration of the dismissal and release of the ADA claim asserted in the

28

Consolidated Complaint, Defendant will perform the following affirmative steps to enhance accessibility for persons with disabilities on the Website and its mobile applications to the extent not already performed.  Specifically, Defendant shall cause the modifications described in this Section II(a) and subject to the conditions and exceptions set forth in Sections XIV (Excused Performance) and XV (Force Majeure) of the Settlement Agreement, to be made to the Website and mobile applications within eighteen (18) months after the Court's approval of the Settlement ("Effective Date").

(i)    Website and Mobile Applications Modifications. "Defendant shall modify the Website and Mobile Applications to improve its accessibility and to provide individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website and Mobile Applications by having the Website and Mobile Applications substantially usable by screen-reader software for Website and Mobile Applications users in the future.  Defendant shall use WCAG 2.0 Level AA, or higher, as a guideline in making such improvements.  The Parties further agree that Defendant can link to third-party websites and/or include third-party content on the Website and Mobile Applications (e.g., any web content that is dictated or generated by a third-party and is not owned, coded, managed, and/or operated by the Released Parties (including, but not limited to, plug-ins, forms, PDF files, social media and YouTube$^{tm}$ videos)), and nothing in this Agreement shall require Defendant to undertake, to complete remediation for, or to be responsible or liable for any form of third-party content that is incorporated into the Website and Mobile Applications.  The Parties agree that all other requested modifications as to the Website and Mobile Applications are not readily achievable or otherwise are not required."  See Exhibit A.

(ii)    Diligence. Defendant agrees to undertake diligent, good faith efforts to satisfy the deadlines listed in this Section (as set forth in Section II of the Settlement Agreement).  The Parties agree that Defendant will have complied with the provisions of Section II of the Settlement Agreement as long as Defendant has undertaken diligent, good faith efforts to meet the referenced deadlines.

(iii)    <u>Intervening Legislation or Regulation</u>.  If legislation is passed modifying Title III of the ADA or if the DOJ or any other federal government entity promulgates final ADA Title III regulations regarding website accessibility during the time period for which modifications are to be made under this Section, this Agreement shall automatically, without further action by the Parties, be modified such that Defendant shall be required only to achieve compliance with the minimum requirements set forth in any such legislation or regulation within the timeframe for compliance set forth in such legislation or regulation.  In the event that federal legislation or regulation imposes new standards that require additional remediation beyond that contemplated by this Agreement, the Parties shall agree upon and seek the Court's approval for a reasonable extension of time for completion.  The Parties shall meet and confer at the written request of either party to discuss whether any other modifications to the terms of this Settlement shall be made to be consistent with any such final statutes, regulations, or rules.

(b)    **Monetary Award and Attorneys' Fees.**

(i)    The Settlement provides for an enhancement award of $1,000 for each of the Named Plaintiffs as the Class Representatives.

(ii)    Class Counsel seek approval of attorneys' fees and taxable costs in the amount of $53,000.00, payable to Class Counsel as follows: $39,000 to Wilshire Law Firm and $14,000 to Stein Saks PLLC.

### 3.    Notice of Settlement to Class Members.

Lead Class Counsel and/or Class Counsel will e-mail or mail a copy of the Notice, substantially in the form of Exhibit A to the settlement agreement, to each individual known to Lead Class Counsel and/or Class Counsel to have a visual disability and to have expressed any concerns similar to those which Named Plaintiffs have alleged in this Action.  Additionally, Defendant will make reasonable efforts, and will bear the costs, to publish the Notice in the next edition of the regularly-circulating publications of the American Council of the Blind, The American Foundation for the Blind, and the Los Angeles Radio Reader Service.  Counsel for the Parties shall publish the Notice within fourteen (14) calendar days after the Court enters the Preliminary Approval Order.  The failure of any Class

Members to receive the Notice shall not be a basis for invalidating the Settlement Agreement or any order entered pursuant to the Settlement Agreement, and the settlement shall nevertheless be binding upon all Class Members.

### 4. Final Approval and Fairness Hearing.

At a date set by the Court, the Settlement Agreement contemplates that the Court will hold a Final Approval and Fairness Hearing, and if the Settlement Agreement is approved, enter an Order of Final Approval that shall: (a) dismiss Count I of the Consolidated Complaint, violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, *with prejudice*; (b) dismiss Counts II, III, and IV—violations of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*; violations of the N.Y.C. Administrative Code § 8-107(4)(a); and Declaratory relief—respectively, *without prejudice*; (c) approve the Settlement, adjudging its terms to be fair, reasonable, and adequate, and direct consummation of its terms and provisions; and (d) enjoin Defendant from further violation of the ADA after the period for compliance has expired.

## III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT

### A. Standard for Determining Fairness, Adequacy, and Reasonableness of a Proposed Settlement.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. "Scrutiny of a class settlement should be no less careful at preliminary approval than at final approval, and the parties must provide enough information to allow the district court to carefully evaluate the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement." *Hunt*, 2017 WL 3608297, at *1 (quoting *Cotter*, 193 F. Supp. 3d at 1037) (quotations omitted). In evaluating overall fairness of a proposed settlement, the court reviews the settlement "as a whole, rather than the individual component parts." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)); *see also Officers for Justice*, 688 F.2d at 625. A determination of whether a proposed settlement is "fundamentally fair,

adequate, and reasonable" requires:

> [A] balancing of several factors which may include, among others, **some or all** of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis added) (*citing Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).  These factors are not exhaustive, and this Court has a "wide discretion in assessing the weight and applicability of each factor."  *See Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526.

This determination, while committed to the sound discretion of the Court, is to be made with deference to the judgment of the class representatives and their counsel, as "the court's intrusion upon what is otherwise a private consensual agreement between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  Accordingly, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the court must not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Id*.

Instead, the purpose of the preliminary evaluation and approval of a proposed class action settlement is to determine whether the settlement is "within a range of possible judicial approval." *Wright v. Linkus Enterprises, Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009) (*citing* Newberg on Class Actions § 11:25 (4th ed. 2002)); *see also N. Cty. Contractor's Assn. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1089, 33 Cal. Rptr. 2d 166 (1994) (describing this as a "reasonable range.").  The preliminary approval is merely the prerequisite to giving notice to elicit the class members' reaction to the proposed Settlement Agreement and determine whether or not to opt out of the Nationwide Class.  The preliminary approval process allows that to happen.

Lastly, as a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

### 1. Strength of Plaintiffs' Case

"When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quotations omitted). Of course, the Court cannot fully assess the strength of Plaintiffs' case, because evidence has not been fully presented. *Adoma*, 913 F. Supp. 2d at 975. "Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

While Plaintiffs' and their counsel naturally believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims, there are mitigating factors.

(a) **The Trier of Fact May Determine the Website Works Sufficiently with Screen-readers, denying Plaintiffs and *Putative* Class Members the Benefits of the Remedial Measures Defendant Has Voluntarily Agreed to**.

These mitigating factors include, but are by no means limited to, the fact that success on the merits at trial would require establishment of Plaintiffs' claims, namely, that the Website violated the ADA, and that the Defendant violated the Unruh Act and NYCHRL by discriminating against individuals with visual impairments. A trier of fact may very well determine, after reviewing the Website and the evidence produced by the Parties' competing experts, that the Website works adequately with screen-reading software and is therefore ADA compliant—thus, denying Plaintiffs and the *putative* Class Members the added benefits of the remedial measures which Defendant has voluntarily agreed to undertake pursuant to the proposed settlement agreement. This eventuality may result because the Department of Justice ("DOJ") has failed to promulgate regulations specifying technical standards for when websites satisfy or violate the ADA. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 907 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 122, 206 L. Ed. 2d 41 (2019). Defendant

has voluntarily agreed to conform the Website and Mobile Applications by having them substantially usable by screen-reader software using Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA, or higher, as a guideline. The WCAG 2.0 Guidelines are attached hereto as **Exhibit 2**.

> WCAG 2.0 guidelines are private industry standards for website accessibility developed by technology and accessibility experts. WCAG 2.0 guidelines have been widely adopted, including by federal agencies, which conform their public-facing, electronic content to WCAG 2.0 level A and level AA Success Criteria. 36 C.F.R. pt. 1194, app. A (2017). In addition, the Department of Transportation requires airline websites to adopt these accessibility standards. *See* 14 C.F.R. § 382.43 (2013). Notably, the Department of Justice has required ADA covered entities to comply with WCAG 2.0 level AA (which incorporates level A) in many consent decrees and settlement agreements in which the United States has been a party. *Id*. at 902 n.1.

The international website standards organization, the World Wide Web Consortium (W3C), developed WCAG 2.0 with the goal of providing a single shared standard for web content accessibility that meets the needs of individuals, organizations, and governments internationally. https://www.w3.org/WAI/standards-guidelines/wcag/. The WCAG documents explain how to make web content more accessible to people with disabilities. *Id*. Web "content" generally refers to the information in a web page or web application, including: (1) natural information such as text, images, and sounds, and (2) code or markup that defines structure, presentation, etc. *Id*.

In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. Dkt. 1 at 5. This technology is known as screen-reading software. *Id*. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet. *Id*. Unless websites are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, and services contained thereon. *Id*. By conforming web content to the WCAG 2.0 guidelines, website owners, operators, and controllers ensure that visually impaired and legally blind persons who require screen-reading software to read website content using their computers, are provided full and equal access.

Importantly, in *Robles*, the Ninth Circuit held that district courts can order compliance with WCAG 2.0 as an equitable remedy, if, after discovery, a website and app fail to satisfy the ADA. 913

F.3d at 907.  However, the Ninth Circuit relegated WCAG 2.0's private industry standards role *only* to serve as an equitable remedy and did not rule that a violation of WCAG 2.0's standards constitutes a *per se* violation of the ADA.  Thus, in the context of websites, what constitutes a violation of the Title III ADA requirement that: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation," 42 U.S.C. § 12182(a), is an open question, which one trier of fact may determine differently than another trier of fact—even looking at the same proffered evidence.  Accordingly, the Defendant's agreement to conform its Website and Mobile Applications to Title III of the ADA by making them substantially usable by screen-reading software using WCAG 2.0 Level AA as a guideline avoids the possibilities of no further remedial measures to be undertaken by Defendant, inconsistent judgments, and the expense and uncertainty of ascertaining Defendant's liability.  Further, this outcome provides the best possible remedial outcome whilst obviating the need and the attenuated risk in determining Defendant's liability, and simultaneously saves the judiciaries and the Parties already strained resources.

>    (b)    **Class Certification Is Tenuous Given the Difficulty Satisfying the Numerosity Requirement.**

Certification would also present challenges, particularly as to the numerosity requirement, as Plaintiff can only roughly estimate the class size.  Where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's case" factor "weighs in favor" of final approval of the Settlement.  *Van Lith*, 2017 WL 1064662, at *11.  Accordingly, the strength of Plaintiffs' case factor favors the Court finding the settlement agreed is fundamentally fair, reasonable, and adequate.

>    **2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation**

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required."  *Adoma*, 913 F. Supp. 2d at 976.  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Id*.

1   (*quoting Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526).

2       Of course, the risk and expense of continued litigation is obvious.  Absent settlement, the

3 Parties would be required to continue litigation, which necessarily would involve significant discovery

4 (which has yet to commence), a motion for certification, which Defendant would surely contest, other

5 dispositive motions such as a motion for summary judgment, and possible appeals.  Once all is said

6 and done, the ultimate recovery might be of no greater value – or of lesser value – to that in the

7 proposed Settlement Agreement.  Moreover, the process only becomes more complex over a longer

8 period of time because new issues emerge through discovery or determinations relating to case

9 strategy.  Accordingly, this factor clearly weighs in favor of approval.  *See, e.g.*, *Barbosa v. Cargill*

10 *Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (finding that this factor favored approval

11 where "there remained significant procedural hurdles for the putative class to confront, including

12 certification" and "there were significant risks in continued litigation and no guarantee of recovery").

13          **3.**     **Relief Offered in Settlement**

14       The relief offered in a settlement is assessed as a whole, "complete package" for overall

15 fairness.  *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527 (*quoting Officers for Justice*, 688

16 F.2d at 628).  Indeed, it is "well-settled law that a proposed settlement may be acceptable even though

17 it amounts to only a fraction of the potential recovery that might be available to the class members at

18 trial." *Id.* (emphasis added) (*citing Linney*, 151 F.3d at 1242 (quotation omitted)).

19       Here, the relief includes injunctive relief and payment of an enhancement award for Named

20 Plaintiffs as the Class Representatives.  While a larger award is "theoretically possible, 'the very

21 essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'"

22 *Barbosa*, 297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *see also Hanlon*, 150 F.3d at 1027

23 (the fact that "the settlement could have been better…does not mean the settlement presented was not

24 fair, reasonable, or adequate.").  Although the settlement does not provide monetary relief for the class

25 members, the Class Members would not be precluded from bringing their State law claims

26 individually.  Thus, Plaintiffs and Class Members benefit from the injunctive relief immediately,

27 without the attendant risks, expense, complexity, and expense of further litigation, and are not

28

1   foreclosed from bringing their State law claims—which provide for monetary damages—thereafter.

2   Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

3   **4.   Arm's Length, Non-Collusive, Negotiated Resolution**

4   This Circuit has held that it puts "a good deal of stock in the product of arms-length, negotiated

5   resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*citing Hanlon*, 150

6   F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). Critically, "[a]n initial presumption of fairness is

7   usually involved if the settlement is recommended by class counsel after arm's-length bargaining."

8   *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr.

9   1, 2011) (emphasis added), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May

10   13, 2011).

11   Here, Counsel for the Parties have separately initiated preliminary reviews of the applicable

12   law and facts pertaining to the alleged claims, potential defenses thereto, and the damages claimed

13   therein. The adversarial, non-collusive, and arm's-length communications between the Parties'

14   counsel comprehensively covered issues including, but not limited to, the following: (1) certification

15   of a Nationwide Class; (2) a service award for the Named Plaintiffs; and (3) modifications made to

16   the Website and mobile applications. The resulting proposed Settlement Agreement is the product of

17   hours of such arm's length negotiations between the Parties, which allows for an initial presumption

18   of fairness. Thus, this factor weighs in favor of the Court finding the settlement agreement is

19   fundamentally fair, reasonable, and adequate.

20   **5.   Experience and Views of Counsel, and Plaintiffs' and Counsel's Adequate**

21   **Representation of the Class**

22   "In considering the adequacy of the terms of a settlement, the trial court is entitled to, and

23   should, rely upon the judgment of experienced counsel for the parties." *Van Lith*, 2017 WL 1064662,

24   at *13 (*citing Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013)). "Great

25   weight is accorded to the recommendation of counsel, who are the most closely acquainted with the

26   facts of the underlying litigation." *Id.* (*quoting Adoma*, 913 F. Supp. 2d at 977) (citation omitted).

27   Accordingly, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own

28

1  judgment for that of counsel." *Id*. (*citing Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528).

2         Class Counsel has extensive experience in litigating ADA class actions. (*See* Declaration of

3  Thiago M. Coelho ("Coelho Decl."), ¶¶ 3-5).  Plaintiff's counsel understands and appreciates the

4  defenses and position of Defendant, who denies the allegations in the Consolidated Complaint, but

5  believes Plaintiffs would ultimately succeed in the action.  Considering the Parties' strongly divergent

6  views, and their awareness of the burdens of proof necessary to establish liability for the claim and the

7  potential challenges to bringing a Motion for Class Certification, the Parties were able to negotiate a

8  fair settlement, taking into account the costs and risks of continued litigation.  The Parties have

9  produced a result that they believe to be in their respective best interests.  The Parties also have taken

10  into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays

11  inherent in such litigation.  Plaintiffs are also aware of the burdens of proof necessary to establish

12  liability for the claim asserted in the action, the defenses thereto, the difficulties in establishing

13  damages for Plaintiffs, and the potential challenges to bringing a Motion for Class Certification.

14         **6.    The Settlement has no Obvious Deficiencies**

15         Furthermore, because the Settlement Agreement has no obvious deficiencies, preliminary

16  approval is proper. *See Mora v. Cal West Ag Services, Inc*., 2019 WL 2084725, at *3 (E.D. Cal. 2019),

17  *report and recommendation adopted*, 2019 WL 3760402 (E.D. Cal. 2019) (*citing* Newberg on Class

18  Actions §13:13 (5th ed. 2014)) ("The purpose of the initial review is to ensure that an appropriate class

19  exists and that the agreement is non-collusive, without **obvious deficiencies**, and within the range of

20  possible approval as to that class.") (emphasis added); *Maciel v. Bar 20 Dairy, LLC*, 2018 WL

21  5291969, at *3 (E.D. Cal. 2018) (*citing* Newberg on Class Actions §13:13 (5th ed. 2011) ("Though

22  Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary

23  approval of settlement and notice to the proposed class appropriate if the proposed settlement 'appears

24  to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

25  not improperly grant preferential treatment to class representatives or segments of the class, and falls

26  within the range of possible approval.'") (emphasis added) (*quoting Lounibos v. Keypoint Government*

27  *Solutions Inc*., 2014 WL 558675, at *5 (N.D. Cal. 2014)).  No such "obvious deficiencies" are present

28

here.

**B.** **The Proposed Method of Distributing Relief and Processing Class-Member Claims is Adequate.**

The Settlement provides practical means for Class Members to gain enhanced access to a variety of information sources about the Website and mobile applications. Additionally, the Settlement Agreement requires Defendant to modify the Website and mobile applications to improve accessibility and to provide individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website and mobile applications by having the Website and mobile applications modified in accordance with WCAG 2.0 Level AA.

While Named Plaintiffs dispute that the Website is, in its current form, compliant, each side recognizes and wishes to avoid the risk, expense, and delay associated with further litigation of these issues, particularly since Defendant is willing to further enhance the accessibility of its Website and mobile applications to its guests with disabilities.

Proposed settlements are not judged against a hypothetical or speculative measure of what might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at 1242 (internal quotations omitted). The proposed settlement achieves a fundamentally fair, adequate, and reasonable resolution of all relevant claims.

**C.** **The Agreement Treats Class Members Equitably Relative to Each Other.**

The Settlement enhances and facilitates access for individuals with disabilities to the Website and mobile applications to a greater extent and far faster than Defendant contends that it could be mandated, if at all, through litigation. Resolving the Website claim would require significant give and take between the Parties, potential experts, and their counsel with respect to what is practical, possible, feasible, desirable, needed, and/or required. Indeed, making the Website and mobile applications accessible to individuals with disabilities is a substantial undertaking, as the Website and mobile applications contain numerous individual pages, and rendering such pages accessible is predominantly

an individual, manual process.

As noted in Section III(B) *supra*, the cornerstone of the compliance process is, subject to certain exceptions, adoption of the WCAG 2.0 Level AA as a guideline in making modifications.  The Settlement Agreement provides assurances of accessibility of the Website and mobile applications within eighteen (18) months after the Effective Date.

The Parties believe these provisions will provide individuals with disabilities full and equal access to the Website and mobile applications.  The fairness of the Settlement is underscored not only by the scope of what is provided and the difficulty of providing it, but by debate as to whether there is any basis for mandating website and mobile application accessibility.

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS

As part of the Settlement, the Parties also seek certification of the Settlement Class conditioned on final approval of the Settlement.  As stated *supra*, the class is: (1) the Nationwide Class.   In settlement cases, class certification is subject to a "lesser standard of scrutiny."  *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1807, n. 19 (1996).  Accordingly, district courts enjoy broad discretion in making such class certification determinations, *see Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001), so long as the following criteria are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  All of these factors are present here, and therefore, conditional certification of the Settlement Class is appropriate.

Moreover, where class-wide injunctive relief is sought, Rule 23(b)(2) further requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class[.]"  For the purposes of the Settlement, the Parties agree that these criteria are satisfied under the lesser standard of scrutiny applicable here.

### A.   Numerosity

Under Rule 23(a), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no exact threshold number that

must be met to meet this requirement; rather the rule "requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). A class with more than 40 members "raises a presumption of impracticability [of joinder] based on numbers alone." Hernandez v. Cnty. of Monterey, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015). In analyzing numerosity "a court may make common-sense assumptions and reasonable inferences." The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust, 2016 WL 314400, at *6 (N.D. Cal. 2016).

The Nationwide Class satisfies numerosity requirements, as the Nationwide Class deals with all individuals with visual disabilities as defined under the ADA – nationwide – who have attempted to gain access to the Website during the relevant time period. Accordingly, virtually every visually impaired visitor to the Website during the relevant time period would be covered by the class. Plaintiffs admit that the number and identities of these Class Members are unknown, and Plaintiffs alleges it could range into the hundreds. For these reasons, Plaintiff contends, and Defendant does not dispute for the Settlement only, that Rule 23's numerosity requirement is satisfied.

Plaintiffs, consulting www.similarweb.com, have determined that 310,000 persons visited www.mieleusa.com in September of 2021. 91.49% of those persons were Americans; accordingly, 283,619 Americans visited the website in September. In order to determine, from that figure, the number of blind persons who use screen-reading software to visit the website, Plaintiffs first noted that as of 2016, the Pew Research survey estimated that 77% of Americans with a disability go online. Given that the percentage of Americans who go online, via desktop, laptop, or phone, is increasing over time, and the likelihood that a blind person would use screen-reading software given its general availability, Plaintiffs conservatively estimate that 70% of blind and visually impaired Americans use screen-reading software to experience the internet. To determine the number of legally blind persons who accessed the Website, Plaintiffs found data showing that 7,894,900 Americans have a visual disability. https://www.nfb.org/resources/blindness-statistics. 1.02 million Americans were

legally blind in 2015.  https://www.nih.gov/news-events/news-releases/visual-impairment-blindness-cases-us-expected-double-2050.  Dividing the number of U.S. visitors to the website by the total U.S. population, 331,449,281 according to U.S. Census data, gives us a percentage of Americans who visited the website.  The figure is .0008%.  Multiplying 70% (the percentage of blind and visually impaired persons who use screen-readers) times 1.02 million legally blind Americans gives us 840,000 legally blind Americans who use the internet.  Multiplying that figure, the percentage of blind and visually impaired persons who use screen-readers, times the percentage of Americans who visited the website in a month, or .0008%, gives us 672 monthly visitors.  As the class period is two years long, the figure is actually 16,128.

## B.    Common Questions of Law or Fact

The commonality factor merely requires that there must be one common legal or factual issue whose resolution will resolve an issue central to the validity of each claim of a class.  *See Wal-Mart Stores, Inc.* 564 U.S. at 350; *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient[.]").  Here, the Nationwide Class claim implicates the Named Plaintiffs' claims that he/she has been denied full and equal access to the *same* Website.  Here, the common question, which is certainly apt to produce common answers which drive the litigation, is, "Is the website compatible with screen-reading software?"

Likewise, the claims are brought commonly under the ADA, and commonly implicate the ADA's definition of visual "disability," meaning: (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  *See* 42 U.S.C. § 12102.  For these reasons, Plaintiffs contend, and Defendant does not dispute the Settlement only, that the "common question" factor is satisfied under Rule 23.

## C.    Typicality

Rule 23's permissive standard for typicality is satisfied so long as Named Plaintiffs have injuries similar to those of the unnamed Class Members that result from the same course of conduct.

There is no requirement that Named Plaintiffs' claims be identical to that of the unnamed Class Members. *See Hanlon*, 150 F.3d at 1020 ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent Class Members; the need not be substantially identical.").

With respect to the Nationwide Class, Named Plaintiffs allege difficulties common to any individual with visual impairments as defined under the ADA, and neither his/her claims nor the relief provided in the Settlement is tailored to a particular level or kind of disability.  Indeed, the Settlement provides injunctive relief following the WCAG 2.0 Level AA standards as a guideline in making such improvements.  Plaintiffs allegedly suffered the same injury as the class members because they were all denied access to the same website for the same reasons.  Thus, Plaintiffs contend, and Defendant does not dispute for the Settlement only, that their claims are typical of the claims of the classes, because they arise from the same factual basis and are based upon the same legal theories as those applicable to the class.

### D.  Adequacy of Representation

The adequacy requirement is met if Named Plaintiffs and their counsel: (1) do not have any conflicts of interest with other Class Members; and (2) will vigorously prosecute the case on behalf of the class.  *Hanlon*, 150 F.3d at 1020 (*citing Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978)).  Here, Named Plaintiffs' interests in prosecuting his Class Action and obtaining the most beneficial recovery possible is fully compatible with the Nationwide Class Members' interests.  In any case, any Class Member who instead determines that he or she wishes to be excluded from the Settlement will have full opportunity to do so.  Further, any Class Member who seeks monetary damages for their State law claims also have a full opportunity to do on an individual basis.  For these reasons, Plaintiff contends, and Defendant does not dispute for the Settlement only, that those requirements are met.

Class counsel is highly experienced in class action litigation and in ADA class actions involving websites which do not work for blind people in particular.  Thiago Coelho has prosecuted over a hundred such cases, many of them to positive settlements requiring defendants to permanently

fix their websites.  (Coelho Decl., ¶ 2.).  Named Plaintiffs have chosen their counsel well.

### E.    Rule 23(b)(2) Requirements

For classes to be certified under Rule 23(b)(2), "the party opposing the class [must have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Here, if Named Plaintiffs are entitled to a particular form of relief under a class claim, all of the members of that class would be entitled to that relief.  Indeed, a key characteristic of the Settlement Classes is that the relief sought is defined in terms of actions to be taken to ameliorate the alleged underlying problems experienced in common by class members.  It is clear that here, the injunctive relief is the dominant form of relief.   Accordingly, Plaintiffs contend, and Defendant does not dispute for the Settlement only, that the requirements for Rule 23(b)(2) requirements are met.

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE

Courts have a wide degree of discretion in requiring notice of settlement of class claims certified under Rule 23(b)(2), as Rule 23(c)(2)(A) merely provides that "the court may direct appropriate notice to the class."  Even in the more demanding context of a Rule 23(b)(3) opt-out class, notice is sufficient if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), *quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).  Moreover, district courts in the Ninth Circuit have found that "there is no ascertainability requirement in the context of a Rule 23(b)(2) class.  *ANTI POLICE-TERROR PROJECT, et al., Plaintiffs, v. CITY OF OAKLAND, et al., Defendants*, No. 20-CV-03866-JCS, 2021 WL 4846958, at *4 (N.D. Cal. Oct. 18, 2021) (quoting *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015)  (distinguishing (b)(2) actions from (b)(3) actions and finding that ascertainability was not required under the former); *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *12 (C.D. Cal. Feb. 26, 2018); *Hernandez v. Lynch*, No.

1    EDCV 16-00620-JGB (KKx), 2016 WL 7116611, at *30 n.17, 2016 WL 7116611, at *14 n.17 (C.D.

2    Cal. Nov. 10, 2016) ("Courts have held that ascertainability may not be required with respect to a class

3    seeking injunctive relief.").

4          The proposed Notice, appended as Exhibit A to the Settlement Agreement, more than meets

5    this standard.  It informs Class Members of the general terms of the complex Settlement Agreement,

6    advises them of their right to request exclusion from the Settlement, and to object at the Final Approval

7    and Fairness hearing, and instructs them how to do so.  It also discloses Class Counsel's fee request

8    and Named Plaintiffs' enhancement payment.  Moreover, the proposed Notice also makes clear that

9    the class members are releasing claims based on the identical factual predicate, *Hesse v. Sprint Corp.*,

10   F.3d 581, 590 (9th Cir. 2010), and the proposed Notice notes that the requirement that a written

11   objection as a prerequisite to appearing in court to object to the settlement agreement may be excused

12   upon a showing of good cause and that the Court will require only substantial compliance with the

13   requirements for submitting an objection.  Additionally, counsel also endeavored to carefully draft the

14   proposed Notice in plain English, so that *putative* class members can easily ascertain its applicability

15   or lack thereof to them and take the steps necessary.

16         Class Counsel will e-mail or mail a copy of the Notice to each individual known to Class

17   Counsel to have a disability and to have expressed any concerns similar to those which Named Plaintiff

18   has alleged in the Action.  Defendant, in turn, will make reasonable efforts, and will bear the costs, to

19   publish the Notice in the next edition of the regularly-circulating publications of the American Council

20   of the Blind, The American Foundation for the Blind, and the Los Angeles Radio Reader Service.

21   Counsel for the Parties shall distribute the Notice within fourteen (14) calendar days after the Court

22   enters the Preliminary Approval Order.

23         Given the nature of the claims and composition of the Settlement Class, and their use of and

24   reliance on non-traditional media for their news and information, these are sufficient and appropriate

25   means of providing notice.

26   **VI.    CONCLUSION**

27         For the reasons set forth above, the Parties respectfully request preliminary approval of the

28

proposed Settlement Agreement, and that the Settlement Classes be certified conditioned on final approval of the Settlement.

Dated: November 01, 2021                          **WILSHIRE LAW FIRM**


                                                  By:*/s/ Thiago Coelho*
                                                      Thiago M. Coelho
                                                      Attorneys for Plaintiff
                                                      JUAN ALCAZAR




Dated:  November 01, 2021                          **THE HANOVER LAW OFFICE**


                                                  By:   */s/Jim D. Newman*
                                                        Jim D. Newman
                                                        Attorney for Defendant
                                                        MIELE, INCORPORATED